## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| Vashon King, | ) | Civil Action No.:_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| Equifax Information Services, LLC, | ) | |
| Mountain Run Solutions, LLC, | ) | |
| Chris Carter, and Brian Fuller, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>COMPLAINT</u>

1.      This is an action brought by Plaintiff, Vashon King, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA").  Additionally, Plaintiff seeks actual damages, statutory damages, and attorneys' fees and costs for Defendants' Mountain Run Solutions, LLC, Chris Carter and Brian Fuller's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, (hereinafter "FDCPA").  Plaintiff also seeks compensatory and punitive damages for the Defendants' violations of South Carolina common law set forth herein.

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be

1

taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

## JURISDICTION AND VENUE

4.    This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. §1692k, 28 U.S.C. §1331, §1332, and §1367.

5.    Venue is proper in the Florence Division because the Plaintiff resides in Darlington County and the Defendants transacted business in this division.

## PARTIES

6.    The Plaintiff, Vashon King, is a resident and citizen of the State of South Carolina, Darlington County, and is over the age of twenty-one (21) years.  Mr. King is a consumer as that term is defined under the FCRA, 15 U.S.C. §1681a(c) and the FDCPA, 15 U.S.C. 1692.

7.    Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169.  At all times and in all respects relevant herein, Defendant Equifax was doing business in the state of South Carolina and in this division. Defendant Equifax is a credit reporting agency as that term is defined by the FCRA, 15 U.S.C. §1681a.

2

8.    Defendant Mountain Run Solutions, LLC (hereinafter referred to as "Mountain Run"), is a Florida limited liability company with a primary business address of 313 E. 1200 S., Suite 200, Orem, Utah 84058.  Mountain Run may be served with process by way of its registered agent, Registered Agent Solutions, Inc., 317 Ruth Vista Road, Lexington, SC 29073.  At all times and in all respects relevant herein, Mountain Run was doing business in the state of South Carolina and in this division.  Mountain Run is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. 1692a(6).

9.    Defendant Chris Carter ("Carter") is a natural person, a member, owner and officer of Mountain Run, and is directly involved in the day-to-day business operations of Mountain Run's reporting and collections of accounts.  Carter is believed to reside at 978 190 West, Orem, Utah 84058.  Carter is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. 1692a(6).

10.    Defendant Brian Fuller ("Fuller") is a natural person, a member, owner and officer of Mountain Run, and is directly involved in the day-to-day business operations of Mountain Run's reporting and collections of accounts.  Fuller is believed to reside at 177 S. Canyon Avenue, Springville, Utah 84663.  Fuller is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. 1692a(6).

11.    Defendants Mountain Run, Carter and Fuller (collectively referred to as "MRS Defendants") use instrumentalities of commerce, including reporting debts to the national Credit Reporting Agencies (hereinafter "CRAs") regarding South Carolina consumers, and using postal mail, the internet, telephone calls and text messages within the State of South

Carolina and this District, for their business, the principle purposes of which is the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due to others by citizens of South Carolina, including Mr. King.

## FACTUAL ALLEGATIONS

12.   Mr. King owned 515 Noel Street as a rental property; it was not Mr. King's primary place of residence.

13.   In or around December 2012, Mr. King was renting said property to Brion Williams ("Williams").   Unbeknownst to Mr. King, and without prior approval from Mr. King, Williams had a home alarm security system installed on Mr. King's property.

14.   Williams signed an Installation Agreement with LPC Protection, LLC on December 11, 2012, and at the same time forged Mr. King's signature on the same document.

15.   On December 11, 2012, when the Installation Agreement was allegedly signed by Mr. King, he was working a 12-hour shift from 3:00 a.m. to 3:00 p.m.

16.   Mr. King never agreed to or gave permission for a security system to be installed at 515 Noel Street.  Additionally, Mr. King never signed any agreement or contract for the systems installation or monthly service.

17.   Williams was evicted by Mr. King on January 31, 2015.

18.   In August 2019, after the account became past due, the MRS Defendants purchased the account from Monitronics.

19.   On or about February 19, 2021, the MRS Defendants sent a letter to Williams

acknowledging that the account had been settled in full and that the balance on the account was $0.00. In this letter, Mountain Run specifically stated that it had removed Williams' name from any association with the debt, that the original debt had been settled in full, and that all derogatory marks were deleted from Williams' credit report.

20.    Thereafter, the MRS Defendants began seeking to collect the same account from Mr. King. Mr. King had several conversations with Mountain Run, and sent at least one letter to Mountain Run disputing the debt and advising the MRS Defendants that he did not owe the debt and that the alleged signature on the contract was a forgery.

21.    The MRS Defendants repeatedly texted Mr. King demanding payment on the account and stated that if Mr. King agreed to settle the account, the MRS Defendants would delete the account from the credit bureaus in its entirety.

22.    In May, 2021, Mr. King learned that Mountain Run was reporting a derogatory collection account on his Experian credit report.

23.    On or about May 12, 2021, Mr. King received a copy of his Experian credit report wherein Mountain Run Solutions, Account No. 813444XXX, was reporting as a seriously past due collection account with a balance of $2,264. The account was also reporting the original creditor as Monitronics/Brinks. As a result of the MRS Defendants' reporting of this account on Mr. King's credit report, his credit score dropped.

24.    On or about May 18, 2021, Mr. King notified Mountain Run via phone and email that he knew nothing about the security alarm and that it wasn't his signature on the contract. Mountain Run responded that because he was the owner of the property, the debt was his

responsibility.  Mountain Run also specifically informed Mr. King that it was reporting the account on his credit.

25.    On or about May 19, 2021, Mr. King received a letter from Monitronics, addressed to Mr. King and Brion Williams at Mr. King's primary residence, stating the account had been sold to Mountain Run.

26.    On that same day, Mr. King also received a letter from Mountain Run stating "We agree to delete this account (813444906) **for $1,585.00 in a lump sum payment if paid by 06/30/2021.**  Once your payment has cleared, **all derogatory marks will be deleted from your credit report in their entirety.**"  (Emphasis is original).

27.    On or about May 19, 2021, Mr. King obtained a copy of his Equifax credit report to see if Mountain Run was reporting the fraudulent account on his Equifax report as well. Upon review, Mr. King confirmed that the disputed account was not reporting on his Equifax credit report, only on his Experian credit report.

28.    On or about June 6, 2021, Mr. King received a new copy of his Experian credit report.   Mountain Run Solutions, Acct. #81344… was reporting as a joint negative collection account with a balance of $2,264.  Although Mr. King had already disputed the account as fraudulent directly to MRS Defendants, Mountain Run was not reporting the account as disputed.

29.    On or about June 7, 2021, Mr. King received a new copy of his Equifax credit report. At that time, the Mountain Run Solutions account was still not reporting on his Equifax credit report.  However, there was a Wells Fargo account that was incorrectly reporting a

balance due.

30.     On June 9, 2021, Mr. King mailed a dispute letter to Experian specifically informing Experian that the Mountain Run Solutions account was not his account, that he did not apply for, nor authorize anyone else to apply for the account in his name, and that his name was forged his name on the agreement.

31.     On or about June 21, 2021, Mr. King received a text message from MRS Defendants stating "This message is for Vashon and Brion.   We purchased your account from Monitronics/Brinks.   We are willing to settle your account for a discounted amount of $1,585.00, if paid by 07.31.2021.  If you settle the account, we offer full deletion of debt. We would delete it from the credit bureaus in its entirety. . . ."

32.     Mr. King was also told by the MRS Defendants that "Because your name was signed on the contract and your information was provided to pass the credit check, the debt becomes your responsibility.  If you would like this removed from your credit report, you will need to either pay the balance or charge the person or persons who signed for you and used your information with fraud.  When we have a copy of the court summons in our office or confirmation of payment, we will remove you from the course of collections."

33.     On July 8, 2021, Mr. King mailed another dispute to Experian again informing Experian that the Mountain Run Solutions account 81344 was a fraud account, that his named was forged, and that he never signed the agreement.

34.     On July 8, 2021, Mr. King mailed a dispute letter to Equifax, via certified mail, specifcally disputing the Wells Fargo account and informing Equifax that the disputed

Wells Fargo account was settled and should be reporting a zero balance.  Equifax received this dispute on July 11, 2021.

35.    On or about July 30, 2021, Mr. King received an electronic alert notice from Experian that Mountain Run had verified the account as accurate.

36.    On or about August 9, 2021, Mr. King received a letter from Equifax informing him that the Wells Fargo account balance had been updated to zero.  Mr. King also received a copy of his updated Equifax credit report and specifically confirmed that Mountain Run was not reporting the disputed collection account on his Equifax credit file.

37.    On August 10, 2021, Mr. King filed a police report with the Darlington County Sheriff's Office, Case Number 202108-0670 regarding the fraud.

38.    On or about August 12, 2021, Mr. King obtained a new copy of his Experian credit report online and Mountain Run was continuing to report the fraudulent collection account as his account.

39.    On or about August 13, 2021, Mr. King sent a third dispute to Experian again informing Experian that the Mountain Run Solutions account was fraudulent and that his name had been forged on the agreement.  With his dispute, Mr. King included a copy of the police report he filed regarding the fraud.

40.    On at least two occasions, Experian forwarded an ACDV to Mountain Run to investigate the Mr. King's dispute on the account and Mountain Run verified the account as accurate.

41.    On December 16, 2021, Mr. King filed a lawsuit against Experian, Mountain Run

Solutions, LLC, Chris Carter and Brian Fuller.  Currently, the claims against Experian have been dismissed with prejudice; the claims against Defendant Carter were voluntarily dismissed without prejudice due to lack of service, and an entry of default has been entered against Mountain Run and Fuller.

42.     On or before February 1, 2022, Experian deleted the Mountain Run account from Mr. King's Experian credit file.

43.     After Experian deleted the Mountain Run account from Mr. King's credit file, the MRS Defendants learned that the account was no longer reporting on Mr. King's Experian credit file and thereafter, with full knowledge of Mr. King's disputes, willfully and intentionally began reporting the fraudulent collection account on Mr. King's Equifax credit file.

44.     On or about July 6, 2022, Mr. King obtained a copy of his Equifax credit file which showed that, on June 30, 2022, following the filing of Mr. King's first lawsuit and the entry of default against Mountain Run and Fuller, MRS Defendants began reporting the fraudulent collection account to Mr. King's Equifax credit file.

45.     In spite of MRS Defendants' express knowledge that Mr. King disputed this collection account, MRS Defendants failed to report the account to Equifax as disputed.

46.     On or about July 22, 2022, Mr. King mailed a letter, via certified mail, to Equifax wherein he specifically disputed the Mountain Run account as not his account.  Mr. King also informed Equifax that his signature was forged on the alleged agreement and that this was a fraud account.

9

47.     Equifax received Mr. King's dispute on July 28, 2022, and thereafter sent an ACDV and a copy of Mr. King's letter to MRS Defendants.

48.     Defendant Fuller personally responds to ACDVs received from credit reporting agencies on behalf of Defendant Mountain Run.

49.     On or about August 5, 2022, Mr. King received a letter from Equifax stating that the disputed Mountain Run account had been verified as accurate.  As a result, Equifax verified that the disputed account belonged to him and it continued to be reported on Mr. King's Equifax credit file.

50.     On or about August 23, 2022, Mr. King sent a second dispute letter, via certified mail, to Equifax wherein he again specifically disputed the Mountain Run account as a fraudulent account.  With this second dispute letter, Mr. King also provided a copy of the police report wherein he reported the fraud.

51.     Equifax received Mr. King's second dispute on August 25, 2022, and thereafter forwarded Mr. King's dispute to the MRS Defendants.

52.     On or about September 3, 2022, Mr. King received a letter from Equifax informing him that it had verified that the Mountain Run account belonged to him because the MRS Defendants had verified that the account was accurate.  As a result, the disputed collection account continued to be reported as belonging to Mr. King on his Equifax credit reports.

53.     On September 19, 2022, Mr. King sent a third dispute letter, via certified mail, to Equifax wherein Mr. King reiterated that the Mountain Run account was a fraudulent account and that he did not apply, nor authorize anyone else to apply, for the account.  Mr.

King specifically requested that Equifax provide him a copy of every document Equifax received from Mountain Run to verify the account.

54.    Equifax received Mr. King's letter on September 27, 2022.

55.    On or about September 29, 2022, Equifax sent Mr. King a letter stating that it had received his recent dispute regarding Mountain Run Solutions *4906.  Equifax informed Mr. King that is was currently processing his previously submitted dispute for this account and that it would "not be conducting further investigation into this particular account(s) at this time."

56.    On or about October 3, 2022, Equifax mailed Mr. King the results of its investigation into his disputes.  MRS Defendants verified the account as accurate and, as a result, Equifax continued to allow the Mountain Run account to be reported as belonging to Mr. King on his Equifax credit file.

57.    As of October 3, 2022, Capital One, Best Buy/Citibank, The Home Depot/Citi, Comenity Bank, and State Employee Credit Union have all viewed Mr. King's Equifax credit file wherein the inaccurate Mountain Run collection account was reporting as Mr. King's account.

58.    At no time from Mr. King's first dispute on May 18, 2021, through the filing of this second lawsuit, have MRS Defendants reported the Mountain Run account as disputed.

59.    Mountain Run and Equifax have an agreement whereby Mountain Run pays Equifax to regularly furnish information regarding its alleged accounts to Equifax to be reported on consumers' credit reports.

60.    MRS Defendants use the reporting of disputed and fraudulent accounts as a weapon to force consumers to pay debts they do not owe.

61.    MRS Defendants received direct notice from Mr. King that he disputed the account as a fraud/forgery account.

62.    MRS Defendants also received indirect notice via the ACDVs from Experian and then the ACDVs from Equifax that Mr. King disputed the reporting of the account as inaccurate as the account was the result of fraud/forgery.  Despite all of these notices, MRS Defendants continually failed to report the account as disputed.

63.    The failure to update a report to indicate that a debt is disputed can, in and of itself, violate the FCRA.  *See Saunders v. Branch Banking and Trust Co. of VA,* 526 F.3d 142 (4th Cir. 2008).

64.    The continued reporting of an account to a CRA, even after a lawsuit has been filed, supports a finding that the defendants acted recklessly in willful violation of the FCRA. *Austin v. Pawtucket Credit Union*, 2019 WL 3935185, at *4 (D. Mass. May 17, 2019).

65.    Here, even after Mr. King's first lawsuit was filed against MRS Defendants, the MRS Defendants began reporting the account to a different CRA and have continued that reporting despite Mr. King's multiple disputes.

66.    MRS Defendants repeatedly failed to make a reasonable investigation into Mr. King's disputes.

67.    Equifax also failed to make a reasonable investigation into Mr. King's disputes.

68.    Upon receipt of the ACDV responses from MRS Defendants, Equifax simply

accepted MRS Defendants' verification of the account and did not undertake to perform any investigation of its own.

69.    Equifax's dispute resolution systems are almost completely automated.

70.    Equifax's automated systems initiated an *Automated Consumer Dispute Verification* Request ("ACDV") which was delivered to Mountain Run through a system known as e-OSCAR.

71.    For over 35 years, courts have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985). *See also Bailey v. Equifax Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016), and *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003) (explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

72.    If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources.  *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

13

73.    Equifax had many reasons to know Mountain Run was not reliable.

74.    Equifax has been a co-defendant in previous lawsuits filed against Mountain Run in federal court alleging violations of the FCRA; all, or virtually all, of the suits allege that Mountain Run reported false information to Equifax about purported home security system debts and then failed to properly investigate when disputed.

75.    Mountain Run consistently fails to respond to these lawsuits and has had default judgment entered against it in almost every instance.

76.    Mountain Run is rated an "F" with the BBB.  BBB records show 330 consumer complaints filed in the last 36 months alone, virtually all of which involve billing/collections.

77.    Despite direct knowledge of Mountain Run's utter unreliability, Equifax continues to accept Mountain Run's electronic "verification" of disputed accounts as sufficient evidence that their reported information is accurate.

78.    Persistent unreliable information from a data furnisher should have put Equifax on notice that problems existed, requiring it to investigate consumers' disputes independently.

79.    No amount of red flags is seemingly sufficient for Equifax to independently investigate consumer disputes.

80.    The FCRA's requirement that CRAs utilize reasonable procedures designed to ensure maximum possible accuracy of reports produced should have resulted in Equifax eliminating Mountain Run as a data furnisher and removing Mountain Run tradelines from its database.  At a very minimum, Equifax was obligated to do more than merely send an

ACDV to Mountain Run to investigate Mr. King's disputes.

81.    Equifax's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

82.    Defendants Carter and Fuller, in their capacities as members, owners and managers of Mountain Run, were responsible for implementing Mountain Run's aforementioned collection practices, including the intentional disregard of consumer disputes, the decision not to report disputed debts as disputed, and the practice of simply verifying accounts back to the CRAs when a consumer disputes liability.

83.    Defendants Carter and Fuller are jointly and severally liable for the actions of Mountain Run and the actions taken pursuant to the policies they put in place and had authority to control.  *See Fed. Trade Comm'n v. Primary Grp., Inc.*, No. 16-13532, at *3 n.2 (11th Cir. Sept. 29, 2017).

84.    The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.,* No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

85.    Reporting a debt to a CRA is an attempt to collect the debt alleged therein.  *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The

court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.") *See also Smith v. Encore Captial Group, Inc.,* 966 F. Supp. 2d 817 (E.D. Wis. 2013).

86.    Credit reporting is recognized as a powerful tool used to extract payment from consumer debtors. *Purnell v. Arrow Fin. Servs., LLC,* 303 Fed. Appx. 297, 304, n.5 (6th Cir. 2008). *See also Malone v. Cavalry Portfolio Servs., LLC,* 2015 U.S. Dist. LEXIS 158310, 2015 WL 7571881 (W.D. Ky. Nov. 24, 2015); *Quale v. Unifund CCR Partners,* 682 F.Supp.2d 1274 (S.D. Ala. 2010); and *Sullivan v. Equifax, Inc.,* 2002 U.S. Dist. LEXIS 7884, 2002 WL 799856 (E.D. PA. Apr. 19, 2002).

87.    An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

88.    MRS Defendants are subjecting Mr. King to false, deceptive, unfair, and unconscionable means to collect a debt.

89.    MRS Defendants' acts and omissions caused particularized harm to Mr. King in that said Defendants are seeking to collect a debt that Mr. King does not owe, and said Defendants have made false statements to third parties in connection with its attempts to collect this debt that have harmed Mr. King's reputation, his credit worthiness, and negatively impacted his credit and credit reputation.

16

90.    It was incumbent upon MRS Defendants to mark the account as disputed, both internally and in any reporting made to third parties.

91.    To date, Defendants continue to report an inacurate and fraudulent account as belonging to Mr. King on his Equifax credit file.  As a result, Mr. King has suffered denials of credit, lost credit opportunities, lost time, lost enjoyment of life, and other damages.

## COUNT ONE
### (Negligent Violation of the Fair Credit Reporting Act – Equifax)

92.    Mr. King hereby adopts, to the extent same are consistent with the allegations contained herein, all of the averments and allegations of paragraphs 12 through 91 as if fully set forth herein.

93.    Equifax maintains and distributes credit data files on Mr. King's credit.

94.    Equifax negligently violated 15 U.S.C. §1681e(b) by failing to establish, follow, or maintain reasonable procedures to assure maximum possible accuracy of the information in its consumer reports regarding Mr. King, as Equifax allowed Mountain Run to continue to furnish data, even after it had copious evidence suggesting that Mountain Run's data was unreliable.

95.    Equifax negligently violated 15 U.S.C. §1681i(1)(A) when it failed to conduct a reasonable investigation regarding the Mountain Run tradeline disputed by Mr. King. Equifax blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own, despite knowing Mountain Run's reported data was unreliable.

96.    Equifax negligently violated 15 U.S.C. §1681c-2(a) by failing to block the reporting

of fraudulent information after receiving a valid police report from Mr. King.

97.    Equifax repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from Mr. King's credit file.

98.    As a result of Equifax's violations of the FCRA, Mr. King has suffered, continues to suffer, and will suffer future damages, including a loss of his personal time, a reduced credit score, denial of credit, lost opportunity to receive credit, damage to his credit reputation, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, loss of enjoyment of life, family discord, distress, frustration, embarrassment, and humiliation. Mr. King is entitled to actual damages in an amount to be determined by the jury.

99.    In addition, Mr. King has incurred out-of-pocket expenses in paying for his credit reports and mailing multiple dispute letters via certified mail, litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

100.    Mr. King is also entitled to his attorney fees, pursuant to 15 U.S.C. §1681o.

## <u>COUNT TWO</u>
### (Willful Violation of the Fair Credit Reporting Act - Equifax)

101.    Mr. King hereby adopts, to the extent same are consistent with the allegations contained herein, all of the averments and allegations of paragraphs 12 through 100 as if fully set forth herein.

102.    Equifax willfully violated 15 U.S.C. §1681e(b) by failing to establish, follow, or maintain reasonable procedures to assure maximum possible accuracy of the information

in its consumer reports regarding Mr. King, as Equifax allowed Mountain Run to continue to furnish data, even after it had copious evidence suggesting that Mountain Run's data is unreliable.

103.   Equifax willfully violated 15 U.S.C. §1681i(1)(A) when it failed to conduct a reasonable investigation regarding the Mountain Run tradeline disputed by Mr. King. Equifax blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own, despite knowing Mountain Run's reported data was unreliable.

104.   Equifax willfully violated 15 U.S.C. §1681c-2(a) by failing to block the reporting of fraudulent information after receiving a valid police report from Mr. King.

105.   Equifax willfully, repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from Mr. King's credit file.

106.   Due to Defendant Equifax's willful failure to comply with the requirements of the Fair Credit Reporting Act, Mr. King is entitled to statutory damages.

107.   As a result of Defendant Equifax's violations of the FCRA, Mr. King has suffered, continues to suffer, and will suffer future damages, including a loss of his personal time, a reduced credit score, denial of credit, lost opportunity to receive credit, damage to his credit reputation, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, loss of enjoyment of life, family discord, distress, frustration, embarrassment, and humiliation. Mr. King is entitled to actual damages in an amount to be determined by the jury.

108.    In addition, Mr. King has incurred out-of-pocket expenses in paying for his credit reports and mailing multiple dispute letters via certified mail, litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

109.    Further, as Equifax's acts and omissions were willful and demonstrate a reckless disregard for Mr. King's rights, Equifax is liable to Mr. King for punitive damages in an amount to be determined by the jury.

110.    Mr. King is also entitled to his attorney fees, pursuant to 15 U.S.C §1681n.

## COUNT THREE
### (Negligent Violation of the Fair Credit Reporting Act – MRS Defendants)

111.    Mr. King hereby adopts, to the extent same are consistent with the allegations contained herein, all of the averments and allegations of paragraphs 12 through 110 as if fully set forth herein.

112.    MRS Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that Mr. King disputed the information Mountain Run had provided to a consumer reporting agency.

113.    MRS Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

114.    MRS Defendants negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Mountain Run to a consumer reporting agency.

115.   MRS Defendants negligently violated 15 U.S.C. §1681s-2(b)(2) by failing to complete all investigations, reviews, and reports required under §1681s-2(b)(1) within 30 days.

116.   MRS Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency. The reporting of the Mountain Run account was inaccurate, incomplete, false and misleading as Mr. King neither opened nor agreed to be responsible for the Mountain Run account, and as Mountain Run failed to report the account as disputed.

117.   MRS Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agency that the reporting of the Mountain Run account was inaccurate, incomplete, false and misleading.

118.   As a result of MRS Defendants' negligent violations set forth above, Mr. King has suffered, continues to suffer, and will suffer future damages, including a loss of his personal time, a reduced credit score, denial of credit, lost opportunity to receive credit, damage to his credit reputation, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, loss of enjoyment of life, family discord, distress, frustration, embarrassment, and humiliation. Mr. King is entitled to actual damages in an amount to be determined by the jury.

119.   In addition, Mr. King has incurred out-of-pocket expenses, litigation expenses and attorneys' fees which, but for the acts and omissions of MRS Defendants alleged herein, would not have been necessary.

120.    Mr. King is entitled to his attorney fees, pursuant to 15 U.S.C. §1681o.

## COUNT FOUR
### (Willful Violation of the Fair Credit Reporting Act- MRS Defendants)

121.    Mr. King hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 12 through 120 as if set forth fully herein.

122.    MRS Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that Mr. King disputed the information said Defendant had provided to a consumer reporting agency.

123.    MRS Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

123.    MRS Defendants willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer reporting agency.

124.    MRS Defendants willfully violated 15 U.S.C. §1681s-2(b)(2) by failing to complete all investigations, reviews, and reports required under §1681s-2(b)(1) within 30 days.

125.    MRS Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency. The reporting of the Mountain Run account was inaccurate, incomplete, false and misleading as Mr. King neither opened nor agreed to be responsible for the Mountain Run account, and as Mountain Run failed to report the account as disputed.

126.    MRS Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agency that the reporting of the Mountain Run account was inaccurate, incomplete, false and misleading.

127.    As a result of MRS Defendants' willful violations set forth above, Mr. King has suffered, continues to suffer, and will suffer future damages, including a loss of his personal time, a reduced credit score, denial of credit, lost opportunity to receive credit, damage to his credit reputation, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, loss of enjoyment of time, family discord, distress, frustration, embarrassment, and humiliation. Mr. King is entitled to actual damages in an amount to be determined by the jury.

128.    In addition, Mr. King has incurred out-of-pocket expenses, litigation expenses and attorneys' fees which, but for the acts and omissions of MRS Defendants alleged herein, would not have been necessary.

129.    Mr. King is entitled to his attorney fees, pursuant to 15 U.S.C. §1681n.

## COUNT FIVE
### (Violation of the Fair Debt Collection Practices Act – MRS Defendants)

130.    Mr. King hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 12 through 129 as if set forth fully herein.

131.    MRS Defendants are engaged in the business of collecting consumer debts from consumers and are each a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

132.    During the one year prior to the filing of this Complaint, MRS Defendants have

continued to make false representations regarding the character, amount, or legal status of the debt in violation §1692e by making false and misleading representations to Mr. King. At the time MRS Defendants made these representations to Mr. King, MRS Defendants knew, or should have known, that said representations were false. Said representations made by MRS Defendants were made recklessly, willfully, and/or intentionally.

133.    MRS Defendants violated 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount, and/or legal status of an alleged debt.

134.    MRS Defendants violated 15 U.S.C. §1692e(8) by communicating information to the credit reporting agencies which it knew, or should have known, to be false.

135.    MRS Defendants failed to communicate that a disputed debt was disputed in violation of §1692e(8).

136.    MRS Defendants violated 15 U.S.C. §1692e(10) by using false representations and/or deceptive means to collect an alleged debt.

137.    MRS Defendants violated §1692f by using unfair and/or unconscionable means to attempt to collect a debt.

138.    The above-stated violations were conducted pursuant to policies put in place by Carter and Fuller and under their specific direction and control.

139.    As such, Carter and Fuller are jointly and severally liable with Mountain Run for each and every violation of the FDCPA set forth above.

140.    Due to MRS Defendants violations of the FDCPA, Mr. King has been caused to suffer damages, including loss of his personal time, harm to his credit score, denial of credit,

lost opportunity to receive credit, damage to his credit reputation, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation. Mr. King is entitled to actual damages in an amount to be determined by the jury.

141. Mr. King requests attorneys' fees due to MRS Defendants violations of the FDCPA pursuant to 15 U.S.C. §1692k.

## COUNT SIX
### (Defamation – Libel – MRS Defendants)

142. Mr. King hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 12 through 141 as if set forth fully herein.

143. MRS Defendants willfully, wantonly, recklessly, and/or maliciously published and communicated false and defamatory statements regarding Mr. King to third parties and the public at large. Said statements harmed Mr. King's reputation and credit reputation, caused Mr. King to be denied credit, and caused Mr. King mental anguish and emotional distress.

144. Said communications and statements were false in that Mr. King was not indebted to MRS Defendants and Mr. King did now owe any balance on the account that is the subject of this action as same was a fraudulent account.

145. At the time said communications and statements were made, MRS Defendants knew or should have known the falsity of the communications and statements, or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity. The account was not Mr. King's and said fact was

known to all MRS Defendants as Mr. King had informed MRS Defendants directly that the alleged signature on the account was a forgery.

146.    The defamatory statements were willfully, recklessly, and maliciously published by MRS Defendants to Mr. King's creditors and potential creditors, and other third parties. The account was reported by MRS Defendants to the national credit reporting agencies for dissemination therefrom throughout the country.    Indeed, the account was viewed by multiple entities after said entities received Mr. King's credit reports.

147.    The defamatory statement referenced Mr. King. Said defamatory statement appeared on Mr. King's credit reports. Said false and defamatory statements have harmed the reputation of Mr. King and/or deterred third persons from associating with Mr. King. Specifically, MRS Defendants reported a derogatory account as belonging to Mr. King, having a past due balance, and being charged off and/or a collection account.

148.    As a proximate consequence of MRS Defendants' willful and malicious conduct, false, embarrassing, misleading and negative information concerning Mr. King was published and disseminated to third parties including the national credit bureaus, current creditors, and potential credit grantors multiple times.

149.    As a result of MRS Defendants' willful and malicious conduct, Mr. King was caused to have negative credit reports, to be held up to public ridicule or shame, be denied credit, to suffer injury to his reputation, and suffer economic loss due to the actions of MRS Defendants.    Additionally, Mr. King was caused to suffer embarrassment, humiliation, anxiety, loss of sleep, anger, physical pain and sickness, worry, nervousness, nausea, loss

of sleep, and severe mental anguish and emotional stress for which he claims compensatory damages.

150.    Due to the intentional or reckless disregard of Mr. King's rights as set forth herein, Mr. King is entitled to and seeks punitive damages against MRS Defendants for its libelous conduct.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendants for the following:

A.    Actual and statutory damages from Defendant Equifax pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant Equifax pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant Equifax pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    Actual and statutory damages from MRS Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

E.    Punitive damages from MRS Defendants pursuant to 15 U.S.C. §1681n(a)(2);

F.    Costs and reasonable attorney's fees from MRS Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

G.    For relief in amounts or other appropriate relief as may be determined by the Court pursuant to 15 U.S.C. §1692 to include Plaintiff's actual damages and statutory

damages of one thousand dollars ($1,000.00) from each of the MRS Defendants for its violations of the FDCPA, as well as attorneys' fees and costs.

H.    For compensatory and punitive damages in an amount to be determined by a struck jury for MRS Defendants' Defamation - Libel.

I.    For this matter to be heard by a jury; and

J.    For such other and further relief as this Court deems necessary and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed.  ID No.  10323

/s/ William K. Geddings
William K. Geddings, Fed.  ID No. 12584
Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com
will@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Of Counsel

28

**<u>DEFENDANTS TO BE SERVED:</u>**

Equifax Information Services, LLC,
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Mountain Run Solutions, LLC
c/o Registered Agent Solutions, Inc.
317 Ruth Vista Road
Lexington, SC 29073

Chris Carter
313 E. 1200 South, Suite 200
Orem, Utah 84058

Brian Fuller
313 E. 1200 South, Suite 200
Springville, Utah 84663